NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **161 MT. AIRY CORNER, LLC, *et al*.**, Plaintiffs, v. **TRAVELERS CASUALTY AND SURETY COMPANY**, Defendant. | Civil Action No. 25-16257 (ZNQ) (JBD) **OPINION** |

**QURAISHI, District Judge**

THIS MATTER comes before the Court upon a Motion to Dismiss filed by Defendant Travelers Casualty and Surety Company ("Defendant"). (ECF No. 13.[1]) Defendant filed a brief in support of its Motion. ("Def.'s Moving Br.," ECF No. 6.) Plaintiffs 161 Mt. Airy Corner, LLC ("Mt. Airy"), H.W. Alward, Inc. ("H.W. Alward"), and Richard Kenworthy ("Kenworthy") (collectively, "Plaintiffs") opposed Defendant's Motion. ("Pl.'s Opp'n Br.," ECF No. 11.) Defendant filed a reply. ("Def.'s Reply Br.," ECF No. 12.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendant's Motion.

---

[1] On October 24, 2025, Defendant filed its Motion to Dismiss without submitting a pre-motion letter in accordance with the Undersigned's judicial preferences. (ECF No. 6.) The Court subsequently administratively terminated Defendant's Motion and construed the filing as Defendant's pre-motion letter. (ECF No. 8.) On November 26, 2025, Defendant filed correspondence on the docket requesting reinstatement of its Motion, which the Court granted. (ECF Nos. 13, 14.) As such, the Court construes ECF No. 13 as Defendant's Motion to Dismiss.

1

I.    **BACKGROUND AND PROCEDURAL HISTORY**[2]

A.    **THE PARTIES**

Mt. Airy is a New Jersey limited liability company, established in 2019, with a property located at 161 Mt. Airy Road, Bernardsville, New Jersey (the "Subject Property").  ("Compl.," ¶¶ 8–9, ECF No. 1.[3])  Kenworthy and his brother established Mt. Airy to manage the Subject Property and address on-site environmental issues.  (*Id.* ¶ 9.)  Kenworthy and his brother[4] are the current owners of the Subject Property.  (*Id.* ¶¶ 8, 15.)

From 1927 to 2014, H.W. Alward operated a construction business and stored numerous underground storage tanks ("UST") on the Subject Property.  (*Id.* ¶¶ 2, 10, 29.)  Kenworthy's father[5] purchased H.W. Alward in 1968, and Kenworthy and his brother purchased H.W. Alward in 1988 from their father upon his retirement.  (*Id.* ¶¶ 10, 15.)  H.W. Alward is no longer operative. (*Id.* ¶ 29.)

Defendant is an insurance company that provided insurance coverage to H.W. Alward and Kenworthy's father during the operation of H.W. Alward on the Subject Property.  (*Id.* ¶ 11.)  The policies sold by Defendant were in effect from January 1, 1978 through January 1, 1993.  (*Id.* ¶ 2.)

B.    **FACTUAL BACKGROUND**

In 2021, non-party environmental consultant, Viridian, Inc. ("Viridian"), was retained to remove one 10,000-gallon diesel fuel UST, one 2,000-gallon leaded gasoline UST, and one 500-gallon diesel fuel tank at the Subject Property.  (*Id.* ¶ 16.)  Upon excavating those USTs, obvious signs of contamination were present based upon: (1) the physical conditions of the USTs;

---

[2] The Court accepts the factual allegations in Plaintiffs' Complaint as true and draws all inferences in the light most favorable to Plaintiffs.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

[3] Defendant appended Plaintiffs' Complaint to its Notice of Removal (*see* ECF No. 1) instead of submitting it as a separate document on the docket.  As such, all citations to Plaintiff's Complaint herein refer to pages 7–18 in ECF No. 1.

[4] Kenworthy's brother is not a party to this action.

[5] Kenworthy's father is not a party to this action.

2

(2) the presence of odors; (3) an elevated PID[6] reading; and (4) the presence of a sheen in the groundwater. (*Id.* ¶ 17.) Given the obvious signs of contamination, Viridian notified the New Jersey Department of Environmental Protection ("NJDEP"), and the site was assigned a case number. (*Id.* ¶ 18.)

Since notifying the NJDEP of the contamination, various investigations and remedial activities were undertaken at the Subject Property. (*Id.* ¶ 19.) For example, soil samples were collected and demonstrated benzene and ethylbenzene in excess of: (1) the Migration Groundwater Exposure Pathway Soil Remediation Standards ("MGW-SRS"); (2) the Residential Inhalation Exposure Pathway Soil Remediation Standards ("RI-SRS"); and (3) the Residential Ingestion-Dermal Exposure Pathway Soil Remediation Standards ("RID-SRS"). (*Id.*) These soil samples also revealed: (1) total xylene levels in excess of the MGW-SRS; and (2) 2-methylnaphthalene levels in excess of the MGW-SRS. (*Id.*) Viridian additionally dug nine-foot-deep groundwater testing pits and implemented groundwater monitoring wells that showed benzene, ethylbenzene, methyl tert-butyl ether ("MTBE") and xylenes levels in excess of the NJDEP's Groundwater Quality Standards ("GWQS"). (*Id.* ¶¶ 20–21.) As a result of these efforts, Mt. Airy has incurred costs in excess of $3.5 million in connection with the investigation, cleanup, and remediation of the Subject Property. (*Id.* ¶ 22.)

On March 10, 2023, Mt. Airy sent correspondence to Defendant, whom Mt. Airy believed may be a potential insurance carrier for H.W. Alward, and requested Defendant's participation in the investigation, as well as coverage and remediation of the environmental contamination at the Subject Property. (*Id.* ¶¶ 23–24.) Defendant acknowledged receipt of the claim and requested additional information to assist Defendant in determining whether coverage was available. (*Id.*

---

[6] The term "PID" is undefined in the Complaint but appears to refer to a "Photoionization Detector," which measures the concentration of volatile organic compounds and certain toxic gases in the air.

¶ 25.)  On June 8, 2023, Plaintiffs responded with the information requested, and send follow up correspondences on July 3 and 28, 2023.  (*Id.* ¶¶ 26–27.)

On August 9, 2023, Defendant located various liability policies issued to H.W. Alward between 1978 and 2022, representing that Defendant could not determine potential coverage obligations until a claim was received indicating that the NJDEP initiated a claim for damages against H.W. Alward for the contamination.  (*Id.* ¶ 28.)  Defendant further requested information regarding the corporate relationship between Mt. Airy and H.W. Alward.  (*Id.*)  On October 10, 2023, Plaintiffs provided Defendant with the requested additional information, contending that: (1) the "claim" is H.W. Alward and Kenworthy's responsibility to clean up the contamination pursuant to "New Jersey's Licensed Site Remediation Professional Act"[7] ("LSRP") and the New Jersey Spill Compensation and Control Act, N.J. Stat. Ann. § 58:10-23.11, *et seq.* ("New Jersey Spill Act"); and (2) coverage is triggered as a result of Plaintiff's responsibility to remedy the exceedances of the NJDEP contamination guidelines and groundwater contamination.  (*Id.* ¶ 29.)

On December 8, 2023, Defendant stated that it was still searching for copies of "the first notice" provided to H.W. Alward and Kenworthy's father, and Plaintiffs should send Defendant: (1) any demands or claims brought against them; (2) documentation from the NJDEP; and (3) responses sent to the NJDEP.  (*Id.* ¶ 31.)  In response, Plaintiffs sent Defendant the NJDEP site list which listed H.W. Alward as the "Program Interest Name," as well as an LSRP retention form filed with the NJDEP.  (*Id.* ¶ 32.)  The LSRP retention form listed non-party Nancy Kenworthy and Mt. Airy as contacts and referenced H.W. Alward.  (*Id.*)  The document stated that H.W.

---

[7] Plaintiffs do not provide a citation to the statute they deem as "New Jersey's Licensed Site Remediation Professional Act."  However, New Jersey's Site Remediation Reform Act, N.J. Stat. Ann. § 58:10C-1, *et seq.*, requires a remediating party to pay for an independent "Licensed Site Remediation Professional" to investigate and determine whether remediation is complete.

Alward is "the responsible party" and that the Kenworthy family established a "separate LLC to help manage the [Subject] [P]roperty and the cleanup." (*Id.*)

On February 29, 2024, Defendant responded, stating that it located primary-level liability policies to H.W. Alward between 1978 and 2022, but the policies were incomplete and/or missing endorsements. (*Id.* ¶ 34.) Defendant further informed Plaintiffs that it requested full certified copies of the policies issued to H.W. Alward and would correspond further upon receipt of those policies. (*Id.*) By April 26, 2024, Defendant stated it received the policies and was reviewing them for coverage. (*Id.* ¶ 36.) Plaintiffs sent correspondence to Defendant on June 5, 2024, July 17, 2024, August 7, 2024, September 16, 2024, and October 14, 2024, seeking a status update on Defendant's coverage determination. (*Id.* ¶ 37.)

On October 23, 2024, Defendant informed Plaintiffs that its policy research was complete and that all of the policies contain pollution exclusions which may limit or preclude coverage for this matter. (*Id.* ¶ 38.) Approximately one month later, on November 26, 2024, Defendant sent further correspondence stating that because no lawsuit had been filed and served upon H.W. Alward, Defendant has no obligation to pay or reimburse any defense fees or expenses H.W. incurred. (*Id.* ¶ 39.) In May of 2025, Plaintiffs forwarded Defendant documents supporting the out-of-pocket costs incurred by Mt. Airy in conjunction with the remediation of the Subject Property. (*Id.* ¶ 40.) To date, Defendant has not provided coverage under the policies in effect during the contamination period. (*Id.* ¶ 43.)

### C.    PROCEDURAL HISTORY

On August 8. 2025, Plaintiffs filed a Complaint in the Superior Court of New Jersey, Somerset County.  ("Def.'s Not. of Removal," ¶ 1, ECF No. 1.)  The Complaint asserts causes of action for: (1) declaratory relief for Defendant to provide coverage for the remediation of the contamination at the Subject Property ("Count One"); and (2) breach of contract for failing to pay the amounts due under the policies ("Count Two").  (Compl. ¶¶ 45–55.)  Defendant removed this action from the Superior Court of New Jersey on October 3, 2025 on the basis of diversity jurisdiction.  (*See generally* Def.'s Not. of Removal.)  In lieu of filing an answer, Defendant moved to dismiss on October 24, 2025.  (ECF No. 6.)  Plaintiffs opposed (ECF No. 11), and Defendant replied (ECF No. 13).

## II.    SUBJECT MATTER JURISDICTION

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires plaintiffs to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

When considering a motion to dismiss, the district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Second, the court must accept as true all of the plaintiff's

6

well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).  A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

The district court's role in reviewing the sufficiency of the complaint is simple: it does not determine "whether the plaintiffs will ultimately prevail," but rather "whether they are entitled to offer evidence to support their claims."  *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000).  On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.    **DISCUSSION**

Defendant asserts two primary arguments in support of its Motion to Dismiss.  First, Defendant contends that Counts One and Two should be dismissed because Mt. Airy is not a named insured or party to the insurance policies.  (Def.'s Moving Br. at 8–10.)  Second, Defendant argues that H.W. Alward and Kenworthy's breach of contract claims should be dismissed for failure to state a claim.[8]  (*Id.* at 11–12.)  Plaintiffs argue that dismissal is inappropriate because: (1) they have adequately alleged a continuous chain of ownership from H.W. Alward to Mt. Airy

---

[8] Defendant does not move to dismiss H.W. Alward or Kenworthy's claim for declaratory relief.

such that Mt. Airy stands in H.W. Alward's shoes for purposes of asserting coverage; and (2) they have stated a claim for breach of contract. (Pl.'s Opp'n Br. at 13–15.) The Court addresses each argument in turn. For the reasons that follow, Defendant's Motion will be granted.

### A.    MT. AIRY'S ABILITY TO ENFORCE THE INSURANCE POLICES

Under New Jersey law, it is well settled that "a stranger to an insurance policy has no right to recover the policy proceeds." *Crystal Point Condo. Ass'n, Inc. v. Kinsale Ins. Co.*, 277 A.3d 1059, 1066 (N.J. 2022) (quoting *Ross v. Lowitz*, 120 A.3d 178, 189 (N.J. 2015)). "There are exceptions to that general rule, including certain assignments of rights . . . and third-party beneficiary status, which requires a showing that the contracting parties intended that a third party receive a benefit from the contract that may be enforced in court[.]" *Id.* (citation modified). Other exceptions include "some statutory or contractual provision permitting direct action[s]" from third parties against insurers. *Caldwell Trucking PRP Grp. v. Spaulding Composites, Co., Inc.*, 890 F. Supp. 1247, 1253 (D.N.J. 1995) (citation omitted).

Defendant contends that Mt. Airy is not a named insured and has not alleged that any statutory or contractual provision permits its direct action against Defendant. (Def.'s Moving Br. at 8–10; *see also* Ex. A to Def.'s Mot.; Ex. B to Def.'s Mot.) In response, Plaintiffs argue that the Complaint alleges that Mt. Airy was formed by the Kenworthy family "for the express purpose of managing and funding the environmental remediation required under New Jersey law for contamination that occurred during the period when [Defendant] insured H.W. Alward[ ] and the Kenworthy[ family]." (Pl.'s Opp'n Br. at 13–15.) Plaintiffs additionally argue that Mt. Airy is H.W.'s successor or agent, and thus, its formation merely changes the entity seeking to enforce H.W. Alward's rights under the policy. (*Id.* at 13–14 (citing *Givaudan Fragrances Corp. v. Aetna Cas. & Sur. Co.*, 151 A.3d 576 (N.J. 2017).)

Here, Plaintiffs allege in the Complaint that: (1) the Kenworthy family has owned H.W. Alward since 1968; (2) H.W. Alward operated from 1927 to 2014; (3) Kenworthy is the current owner of the Subject Property; and (4) the Kenworthy family established Mt. Airy in 2019 to manage the Subject Property and address any on-site environmental issues. (*See* Compl. ¶¶ 2, 9–10, 14–15, 29.)  Contrary to Plaintiff's arguments, and despite the commonality of ownership, the pleadings do not contain facts sufficiently alleging that Mt. Airy is H.W. Alward's successor-in-interest or agent.  Nor does the Complaint allege that the New Jersey Spill Act or a contractual provision in one of the policies bestows Mt. Airy the right to pursue a direct action against Defendant for insurance coverage or a breach thereof.

Moreover, Plaintiff's reliance on *Givaudan Fragrances Corp. v. Aetna Cas. & Sur. Co.*, 151 A.3d 576 (N.J. 2017) for the proposition that Mt. Airy is merely a change in the corporate entity enforcing the insurance policies is inapposite.  In *Givaudan Fragrances*, the plaintiff and Givaudan Flavors were owned by a single corporate parent and became affiliated through a series of mergers and corporate restructuring. 151 A.3d at 580.  Through those corporate restructurings, Givaudan Flavors become the successor-in-interest to the defunct named insured under the subject insurance policies.  *Id.*  In 2006, the NJDEP sued the plaintiff for removal costs and damages resulting from a discharge of hazardous substances in connection with the plaintiff's fragrance operations and, in 2009, the plaintiff was sued as a third-party defendant for contribution related to the contamination.  *Id.* at 581.  The plaintiff then notified the insurer-defendants of those environmental claims, but the insurer-defendants declined coverage because the plaintiff was not the named insured.  *Id.*  The plaintiff thereafter brought a declaratory action against the insurer-defendants, and while that action was pending, Givaudan Flavors executed an assignment of its post-loss rights under the subject insurance policies, which subsumed the right to insurance

coverage for claims related to the fragrance operations that had been transferred pursuant to corporate restructuring in 1998. *Id.* at 581–82. The New Jersey Supreme Court held that the insurance policies' anti-assignment clauses were not applicable to Givaudan Flavors' post-loss claim assignment to the plaintiff because the environmental contamination occurrence, and resulting loss, occurred during the relevant policy periods. *Id.* at 591, 593. In other words, "[w]here a valid post-loss claim assignment is made as to a given claim, an insurer has a duty to defend the assignee as the holder of that claim." *Id.* at 594. Here, however, no facts are pled in the Complaint indicating that H.W. Alward executed a post-loss claim assignment to Mt. Airy. (*See generally* Compl.)

For these reasons, the Court concludes that Mt. Airy has not plausibly pled its right to enforce H.W. Alward's rights under the insurance policies. Counts One and Two, as asserted by Mt. Airy, will therefore be dismissed without prejudice.

## B.    BREACH OF CONTRACT

To state a claim for breach of contract in New Jersey, a plaintiff must plausibly allege: (1) "that the parties entered into a contract containing certain terms"; (2) "that [the plaintiff] did what the contract required [her] to do"; (3) that [the defendant] did not do what the contract required [it] to do, defined as a breach of contract"; and (4) "that [the defendant's] breach, or failure to do what the contract required, caused a loss to the plaintiff[ ]." *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (internal quotation marks and citation omitted).

Defendant contends H.W. Alward and Kenworthy have failed to allege that they have sustained damages in connection with Defendant's alleged breach of contract. (Def.'s Moving Br. at 11–12.) In their opposition papers, Plaintiffs contend that the Complaint expressly states that all Plaintiffs have incurred damages in excess of $3.5 million in connection with the investigation, cleanup, and remediation of the Subject Property, and that H.W. Alward and Kenworthy are—

10

pursuant to the New Jersey Spill Act—strictly liable, jointly and severally, for the cleanup of the hazardous substances. (Pl.'s Opp'n Br. at 15 (citing N.J. Stat. Ann. § 58:10-23.11g(c)(1)).)

Having reviewed the Complaint in its entirety, the Court finds that Plaintiffs have not adequately alleged that Defendant's breach of contract caused a loss to H.W. Alward or Kenworthy. Contrary to Plaintiffs' argument, the Complaint alleges that only Mt. Airy has incurred a loss in excess of $3.5 million for the cleanup and remediation of environmental pollution at the Subject Property. (Compl. ¶ 22). Plaintiffs similarly fail to allege in the Complaint that the New Jersey Spill Act's statutory scheme imposes strict, joint and several liability upon H.W. Alward or Kenworthy such that H.W. Alward or Kenworthy have sustained a loss in connection with Defendant failing to provide insurance coverage. (*See generally id.*) As previously established, Mt. Airy is not alleged to have been assigned any right under the insurance policies and, therefore, any costs it incurred for remediation are insufficient to state a claim for breach of contract. *See Crystal Point*, 277 A.3d at 1066 ("[A] stranger to an insurance policy has no right to recover the policy proceeds."). The Court accordingly concludes that H.W. Alward and Kenworthy have failed to state a claim for breach of contract.

In sum, the Court will dismiss without prejudice Count One, to the extent it is asserted by Mt. Airy, and Count Two, as asserted by all Plaintiffs, for failure to state a claim upon which relief can be granted. Count One, as asserted by H.W. Alward and Kenworthy, may proceed. Having found that various contentions were presented by Plaintiffs in their briefing, but not pled in the Complaint, the Court will grant Plaintiffs leave to amend the Complaint. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

## V.    <u>CONCLUSION</u>

For the reasons stated above, the Court will GRANT Defendant's Motion to Dismiss. Count One, as asserted by Mt. Airy, and Count Two, asserted by all Plaintiffs, will be DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief can be granted.  Plaintiffs will have thirty days to file an Amended Complaint, limited to addressing the deficiencies noted herein.  An appropriate Order will follow.


Date: June 26, 2026


s/ Zahid N. Quraishi

**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
